UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANGELA PULLIAM,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED AIRLINES, INC., a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 2:10-cv-01406-MMD-GWF<br><br>ORDER |

Before the Court is Defendant United Airlines, Inc.'s Motion for Summary Judgment (dkt. no. 25), Motion to Strike Affidavit of Angela Pulliam (dkt. no. 38), and Motion to Strike Declaration of Jacqueline Van Dyke (dkt. no. 39). The Court has also considered the oppositions and replies filed for these motions.

**I.     BACKGROUND**

Plaintiff Angela Pulliam ("Pulliam"), an African American, was previously employed by United Airlines, Inc. ("United") as a Customer Service Representative at McCarran International Airport. In August 2010, Pulliam filed suit against United for race and color discrimination and retaliation. Pulliam alleges she was subjected to race and color discrimination on two occasions, the second of which Pulliam also believes was retaliatory in nature.

First, in August 2007, one of Pulliam's supervisors, a Caucasian woman named Patricia Giusti ("Giusti"), issued Pulliam a Level 1 disciplinary notice for being absent from her work area during work hours (the "Giusti Incident").[1]  Pulliam made a complaint against Giusti in November 2007, disputing Giusti's claim that she was absent from her work area and arguing that Giusti's treatment of her was motivated by race.  United investigated Pulliam's complaint and determined no race discrimination occurred.  United did, however, reduce Pulliam's level 1 discipline to a letter of counsel.

Second, in December 2007 – approximately one month after Pulliam made the complaint against Giusti – another one of Pulliam's supervisors, LaToyia Hill ("Hill"), an African American, recommended that Pulliam be fired for using inappropriate language towards two United passengers and for leaving work early on a regular basis (the "Hill Incident").  Pulliam was terminated in January 2008 after an investigative hearing where Pulliam was represented by the Union.

Pulliam filed suit against United in August 2010 asserting the following claims: (1) race and color discrimination in violation of Title VII of the Civil Rights Act of 1964 and NRS 613.330, (2) race and color discrimination in violation of 42 U.S.C. § 1981, (3) injunctive relief, and (4) retaliation in violation of Title VII.  United has now filed a motion for summary judgment as to all claims.  Pulliam filed an opposition to United's motion and in support of that opposition attached, among other exhibits, her own affidavit and a sworn declaration by Jacqueline Van Dyke, another former United employee.  United subsequently filed two motions to strike portions of both the affidavit and the declaration for purported violations of the Federal Rules of Evidence.  For the reasons discussed below, the Court denies United's motions to strike but grants its motion for summary judgment.

///

///

---

[1] United has a progressive discipline policy with level 1 being the least severe.

2

## II. DISCUSSION

### A. United's Motions To Strike

United asks the Court to strike certain portions of Pulliam's affidavit and Jacqueline Van Dyke's sworn declaration, both submitted by Pulliam in support of her opposition to United's motion for summary judgment. United argues that the Court should strike these portions because they are inadmissible as evidence. However, "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Therefore, a motion to strike is unnecessary because the Court is already obliged to disregard any inadmissible evidence in the affidavit and declaration. Therefore, United's motions to strike are denied.

### B. United's Motion For Summary Judgment

#### 1. Summary Judgment Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

(1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### 2. Title VII Discrimination

To maintain a claim for Title VII discrimination, a plaintiff must either (1) produce direct evidence demonstrating the employer's conduct was, more likely than not, motivated by a discriminatory reason, or (2) satisfy the factors of the *McDonnell Douglas* burden-shifting framework.  *Surell v. Cal. Water Serv.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  The Court will first discuss whether Pulliam produces sufficient direct evidence.

#### a. Direct Evidence

"Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'"  *Vasquez v. Cty. of Los Angeles*, 349 F.3d

634, 640 (9th Cir. 2003). Pulliam provides no direct evidence of discrimination. To the contrary, with respect to the Giusti Incident, Pulliam admitted that Giusti never said anything to her that was inappropriate with regard to race (dkt. 25, United's Motion for Summary Judgment, Ex. 3, Pulliam's Depo., 118:9-19). With respect to the Hill Incident, Pulliam admitted that Hill, also an African American, would not discriminate against her on the basis of race. (*Id*., at 162:24-164:4). Finally, Pulliam makes no argument in her opposition that she has direct evidence of discrimination. Accordingly, Pulliam must satisfy the factors of *McDonnell Douglas* to prevail on United's motion for summary judgment.

### b.  *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff must show that (1) she is a member of a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class were treated more favorably. *Vasquez*, 349 F.3d at 640 n. 5. If the plaintiff meets her burden, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its conduct. *Id.* at 640. If the employer provides such a reason, the burden shifts back to the plaintiff to prove that the employer's reason is a pretext for discrimination. *Id.*

As mentioned above, Pulliam alleges two separate occasions of discrimination, the Giusti Incident and the Hill Incident. The Court will conduct the *McDonnell Douglas* analysis as to each incident individually.

### i.  The Giusti Incident

Pulliam fails to establish a *prima facie* case of discrimination as to the Giusti Incident because the evidence provided demonstrates she was not performing according to United's legitimate expectations. Giusti issued Pulliam a Level 1 discipline because Pulliam was absent from her work area during work hours, violating two of United's

Rules of Conduct (dkt. no. 25, Ex. 4, Rules of Conduct, Rules 37 and 41; *id*. at Ex. 5, Report of Non-Punitive Disciplinary Action). Specifically, on the day in question, Pulliam was required to assist passengers whose flight had been cancelled. (*Id*. at Ex. 6, Giusti Depo., 21:24—24:10; *id*. at Ex. 5, Report of Non-Punitive Disciplinary Action.) However, when Giusti (Pulliam's supervisor that day) went to the terminal gate to supervise the process, she could not locate Pulliam. (*Id.*) Giusti asked other United employees at the terminal gate for Pulliam's whereabouts but no one knew where she was. (*Id.*) Giusti checked the terminal gate and the general work area, including the break room, and could not locate Pulliam. (*Id.* at Ex. 6, Giusti Depo., 23:22—24:1.)

Pulliam claims that she did not leave her work area, and that Giusti could have easily located her by calling her on the radio. However, Giusti did not believe Pulliam was carrying a radio because employees working in that position do not carry radios. (*Id.* at 24:7-10.) In any event, even if Pulliam was present in her work area, it is sufficient that Giusti legitimately believed otherwise when she issued Pulliam a level 1 discipline. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("courts 'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless'").[2] Therefore, Pulliam fails to provide sufficient evidence demonstrating that she was performing up to United's reasonable expectations.

However, even if Pulliam were performing according to United's reasonable expectations, Pulliam also cannot show that there is a factual dispute that similarly situated employees outside her protected class were treated more favorably than her. Indeed, Pulliam points to no other employee who was absent from the work area during

---

[2] United also claims that Pulliam's computer transaction logs show that she was logged off of her computer during her alleged absence. However, these logs, in the form provided to the Court, are almost indecipherable, (*See* dkt. no. 25, Motion for Summary Judgment, Ex. 8), and therefore unhelpful. Irrespective of what the logs show, however, Giusti legitimately believed Pulliam was absent from her work area during the time in question, and as stated above, this is sufficient.

work hours that was not issued a level 1 disciplinary notice. She merely argues that she was the only African American working at the terminal gate during the shift in question, and was also the only employee that was disciplined during the shift. However, this argument is meaningless absent any evidence that there were non-African American employees whom Giusti also believed was absent from the work area and whom she did not discipline. Therefore, Pulliam fails to establish this element of the *prima facie* case as to the Giusti Incident.

In addition, Pulliam fails to demonstrate that she suffered an adverse employment action as to the Giusti Incident. For discrimination purposes, an adverse employment action is defined as an adverse action that "materially affect[s] the compensation, terms, conditions, or privilege[s] of [plaintiff's] employment." *Rodriquez v. Pierce Cty.*, 267 Fed. Appx. 556, 557 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)). Initially, Giusti issued Pulliam a level 1 disciplinary notice, the least severe level of discipline at United. (Dkt. no. 25, Motion for Summary Judgment, Ex. 5, Report of Non-Punitive Disciplinary Action.) But ultimately the level 1 discipline was reduced to a Letter of Counsel, a document which basically explained that Pulliam is not to leave her work area again during work hours in order to avoid future discipline. (*Id*. at Ex. 7.) This letter did not affect Pulliam's employment terms, conditions, etc., and is merely placed in her file as documentation of the incident. Also, the collective bargaining agreement entered into between United and Pulliam's union notes that letters of counsel are non-disciplinary. (Dkt. no. 37, Reply, Ex. 1, CBA Agreement, Article XVII, § D.) Therefore, Pulliam has not demonstrated she suffered an adverse employment action as a result of the Guisti Incident.

In sum, Pulliam fails to provide sufficient evidence to establish a *prima facie* case of discrimination with respect to the Giusti Incident. Accordingly, Pulliam fails to satisfy the *McDonnell Douglas* factors and the Court grants United's motion for summary judgment as to the Giusti Incident.

///

The Court will now discuss whether Pulliam satisfies the *McDonnell Douglas* factors as to the second alleged incident of discrimination, the Hill Incident.

### ii.    The Hill Incident

Pulliam was terminated approximately two months after she made a complaint of discrimination against Giusti. LaToyia Hill, one of Pulliam's supervisors, recommended Pulliam's termination for two reasons: (1) a confrontation Pulliam had with two United passengers, and (2) leaving work early regularly. Pulliam alleges she was terminated because of her race, and that these two reasons are merely pretextual.[3]

Specifically, on December 16, 2007, Pulliam was working at a terminal gate when two United passengers missed their flight. (Dkt. no. 25, Motion for Summary Judgment, Ex.15, Incident Report prepared by Beth Nagurny; Ex. 16, Passenger Complaint from Mike Schmid; Ex. 17, Passenger Complaint from Ron Clowes.) One of the passengers purportedly told Pulliam that it was United's fault that they missed the flight. (*Id.*) The passengers both reported that Pulliam responded by calling him an "asshole." (*Id.*) Pulliam's co-worker, Robert De Leon, was present and overheard Pulliam call him a "smart ass." (*Id.* at Ex. 18, Robert F. De Leon's Written Statement.) Pulliam claims that she did not use profanity, but instead said "don't get smart asking me questions." (*Id.* at Ex. 3, Pulliam Depo., 154:7-155:3).

Following Pulliam's exchange with the two passengers, Hill attempted to locate Pulliam to discuss the incident but was not successful. (*Id.* at Ex. 25, Hill Decla., ¶ 6.) Hill subsequently checked the employee parking lot records and discovered that Hill not only swiped out of the parking lot prior to the end of her shift on the day of the Hill Incident, but on numerous occasions during the months of November and December.

///

///

---

[3] Hill recommended Pulliam's termination and the termination decision was made after an investigative review hearing where Pulliam was represented by her union representative. Pulliam does not claim that she was subjected to discrimination or retaliation during the investigative review hearing process.

8

(*Id*. at Ex. 25, Hill Decla., ¶¶ 6, 7; Ex. 20, Pulliam's Parking Lot Records.)[4]  Hill conducted an investigation into Pulliam's exchange with the two passengers and her leaving work early and ultimately decided to recommend that Pulliam be terminated.  (*Id*. at Ex. 25, Hill Decla., ¶ 11.)

The Court will now analyze the *McDonnell Douglas* factors as to Pulliam's claim that her termination was racially motivated.

### (1)   *Prima Facie* Case

Pulliam meets the elements of a *prima facie* case of discrimination as to the Hill Incident, at least with respect to her leaving work early.  First, Pulliam provides sufficient evidence to demonstrate she was performing up to United's expectations when she was terminated because it was common for some employees to leave work early without permission from supervisors.  Pulliam attaches a declaration from another former United employee, Jacqueline Van Dyke, wherein Van Dyke states that it was "very common that when the last flight that we would be working on for a particular shift was finished that the Service Directors (who were often delegated this task by Supervisors) or Supervisors would dismiss us and tell us to leave and 'have a good day' even though it might still be several minutes before our official stop work time."  (Dkt. no. 32, Van Dyke Decla., Ex. 2, ¶ 5.)[5]  In her affidavit, Pulliam claims that supervisors would often "see them leaving and wish them a good evening and thank them for their work that day."[6]  (*Id*. at Ex. 3, ¶ 25.)

Additionally, Pulliam provides evidence that on the day in question, December 16, two other employees scheduled for Pulliam's shift, (*id*. at Ex. 29, Las Vegas Gate

---

[4] Because it takes Pulliam roughly 10 minutes to get to the parking lot from her gate terminal, (dkt. no. 25, Motion for Summary Judgment, Ex. 3, Pulliam Depo., 170:19), Pulliam must have actually left her work area about 12 minutes prior to the end of her shift.

[5] United argues that this statement is inadmissible for lack of personal knowledge.  However, the Court finds that Van Dyke can testify as to her experiences as an employee with United, and the things she observed.  Furthermore, the supervisor's statement of "have a good day" is not hearsay because it is not offered to prove the truth of the matter asserted, it is offered as a verbal act.

[6] This statement is admissible as evidence for the same reasons Van Dyke's statement is admissible.

9

Schedule), also left work early (*id*. at Exs. 30 and 31).  Another United employee testified that with a certain flight he would routinely leave "five minutes before the end of our shift." (*Id*. at Ex. 8, De Leon Depo., 37:4-23.)  Therefore, Pulliam's evidence is sufficient to establish, at least at this stage, that it was common for some employees to leave work early, and that their supervisors were aware they were leaving early.  Thus, viewing all facts and drawing all inferences in the light most favorable to Pulliam, the Court finds Pulliam demonstrates that she was performing up to United's expectations when she was leaving work early.

Pulliam fails, however, to establish she was performing up to United's reasonable expectations when she confronted the two United passengers.  Pulliam's only evidence as to this confrontation is her own affidavit.  (Dkt. no. 32, Opposition, Ex. 3, ¶ 33.)  Pulliam claims she did not use profanity during this confrontation but only said "don't get smart asking me questions."  (*Id*.)  However, as discussed above, both the passengers and Pulliam's co-worker claim she used profanity.  (Ex. 16, Passenger Complaint from Mike Schmid; Ex. 17, Passenger Complaint from Ron Clowes; *id*., at Ex. 18, Robert F. De Leon's Written Statement.)  More importantly, any of the above statements would violate United's Rules of Conduct.  (Dkt. no. 25, Ex. 4, Rules of Conduct, Rule 41; *id*. at Ex. 28, Nicholson Decla., ¶ 9.)  Therefore, Pulliam fails to establish that she was performing up to United's expectations as to the confrontation with the two passengers.

The fourth element in a *prima facie* case for discrimination is that similarly situated employees outside the plaintiff's protected class were treated more favorably.  *Vasquez*, 349 F.3d at 640 n. 5.  Pulliam also meets this element as to her leaving work early because, as discussed above, her evidence shows that other non-African American employees left work early and were not discharged as she was.  However, Pulliam fails to establish that she was treated differently with respect to her exchange with the two passengers.  Pulliam provides no evidence that another, non-African American United employee had such an exchange with United passengers and received no discipline.

///

The other two elements of the *prima facie* case are undisputed; Pulliam is a member of a protected class and she suffered an adverse employment action when she was terminated. Therefore, in sum, Pulliam demonstrates a *prima facie* case as to her being discharged for leaving work early but not for her exchange with the passengers.

### (2)  Legitimate, Non-Discriminatory Reasons

Now the burden shifts to United to demonstrate a legitimate, non-discriminatory reason for discharging Pulliam. *Vasquez*, 349 F.3d at 640. United argues that it discharged Pulliam for two reasons: (1) violating its policy forbidding employees from leaving work before their shift ends, and (2) using inappropriate language in a confrontation with two United passengers, a violation of United's Rules of Conduct.

First, with respect to Pulliam's leaving work early, Defendants point out that in order to leave work early an employee must fill out an exceptions form and present it to United for approval, something Pulliam did not do. (Dkt. no. 37, Reply, Ex. 7, French Depo., 54:12-55:23.) Furthermore, United points out that it had an employee posting at the job site reminding employees of this policy, so Pulliam should have known about it. (*Id*. at Viera Depo., 36:16-25.) Thus, United argues, Pulliam violated its policy by leaving work early without completing an exceptions form, and in so doing she also violated United's Rules of Conduct. (*Id*. at Ex. 4. Rules of Conduct, Rule 3; dkt. no. 37, Reply, Ex. 7, Chudoba-French Depo., 54:4-55:24.) The Court finds this is a legitimate non-discriminatory reason for Pulliam's termination.

Second, even if Pulliam did establish a *prima facie* case of discrimination as to her confrontation with the passengers, the Court finds that United had a legitimate, non-discriminatory reason for terminating her for that confrontation. As discussed above, any of the statements made by Pulliam that have been offered into evidence would violate United's Rules of Conduct. (Dkt. no. 25, Ex. 4, Rules of Conduct, Rule 41; *id*. at Ex. 28, Nicholson Decla., ¶ 9.) Thus, in sum, United provides sufficient evidence to show that Hill had a legitimate, non-discriminatory basis on which to recommend Pulliam's termination.

          **(3) Pretext**

  The burden now shifts to Pulliam to demonstrate that United's proffered reasons are pretextual. The Court finds Pulliam has not shown pretext. First, Pulliam claims that she was terminated because of Giusti's racial animus towards her (dkt. no. 32, Opposition, 23:16-17), yet she offers no evidence that Giusti was involved in her termination process. Rather, it was Hill who recommended her termination and Pulliam admits that Hill did not discriminate against her on the basis of race. (Dkt. no. 25, Motion for Summary Judgment, Ex. 3, Pulliam Depo., 162:24-164:4.) Pulliam then points to evidence that others outside of her protected class left work early (*supra* at Sect. II(B)(2)(b)(ii)(1)), and were not disciplined. However, it is undisputed that Hill was not aware of these other employees when Hill recommended Pulliam's discharge (*id*. at Ex. 25, ¶ 10), undermining any claim that Hill discriminated between Pulliam and these other employees. While Pulliam offers sufficient evidence to show that it was common for some employees to leave work early without permission from supervisors (*supra* at Sect. II(B)(2)(b)(ii)(1)), there is no evidence that Hill knew about this practice or participated in this practice. And it is undisputed that if Hill had become aware of these other employees leaving early she would have recommended their termination. (*Id*.) Additionally, United provides evidence of other employees outside Pulliam's protected class who left work early and were terminated as Pulliam was. (Dkt. no. 25, Motion for Summary Judgment, Ex. 29, French Decla., ¶¶ 5, 6; *id*., at Ex. 22, Viera Depo., 37:12—39:25; dkt. no. 57.) Therefore, the evidence before the Court demonstrates that United's proffered reasons for terminating Pulliam are credible, and therefore, not pretextual.

        **(4) Two Independent Reasons for Firing**

  As stated above, United had two independent reasons for discharging Pulliam, (1) her exchange with the two United passengers, and (2) her leaving work early. However, Pulliam did not establish a *prima facie* case as to her exchange with the two United passengers. Therefore, even assuming Pulliam can show pretext as to her leaving work

///

early, United still has another independent reason on which it discharged Pulliam – her exchange with the passengers.

In general, when an employer has two independent reasons for discharging an employee, the employee must show that both reasons were improper. *See Jaramillo v. Colo. Jud. Dept.*, 427 F.3d 1303, 1310 (10th Cir. 2005) ("an employee must proffer evidence that shows each of the employer's justifications are pretextual"); *Ghosh v. Indiana Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1092-93 (7th Cir. 1999) ("[w]hen the defendant offers multiple reasons for its employment decision, the plaintiff must show that all of the proffered reasons are pretextual in order to reverse the district court's grant of summary judgment"); *Combs v. Plantation Patters, Meadowcraft, Inc.*, 106 F.3d 1519, 1538-39 (11th Cir. 1997); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998).

Exceptions to this rule do exist. For example, if the employer piles on a number of reasons to support its employment decision, a reasonable jury could find *all* of the reasons are suspicious even though there is evidence debunking only *some* of them. *Smith v. Chrysler Corp.*, 155 F.3d 799, 809 (6th Cir. 1998); *Fuentes v. Perskie*, 32 F.3d 759, 764-65 n. 7 (3rd Cir. 1994); *Chapman v. AI Transp.*, 229 F.3d 1012, 1048-51 (11th Cir. 2000). "Debunking one of the employer's explanations defeats the case for summary judgment 'only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.'" *Jarmillo*, 427 F.3d at 1310 (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995)). However, the Court finds that none of these exceptions are present in this case.

United did not pile on numerous unrelated reasons to support its decision to discharge Pulliam, it only provided two reasons, both of which grew out of the same incident on December 16, 2007. Furthermore, it is undisputed that Hill would have recommended termination for either reason, independent of the other. (Dkt. no. 25, Motion for Summary Judgment, Ex. 25, Hill Decla., ¶ 11.) Therefore, the Court finds that

13

even if Pulliam had provided evidence of pretext as to one of United's reasons for discharging her – her leaving work early – summary judgment is proper as to the entirety of her claim (as to the Hill Incident). And because Pulliam has failed to establish a *prima facie* case as to the Giusti Incident as well (see above), the Court grants United's motion for summary judgment as to Pullman's Title VII discrimination claim.

### 3. Section 1981 and NRS 613.330

The Court grants United's motion for summary judgment as to Pulliam's § 1981 and NRS 613.330 claims for the same reasons it grants the motion as to the Title VII discrimination claim.

### 4. Title VII Retaliation

To maintain a retaliation claim, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. See *id*. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. See *id*. Only then does the case proceed beyond the summary judgment stage.

Pulliam's retaliation claim fails because she has not provided sufficient evidence to establish a causal link between her involvement in a protected activity – her complaint of race discrimination against Giusti – and the adverse employment action – her termination. To the contrary, the evidence provided demonstrates that Hill, who recommended Pulliam's termination, undisputedly did not even know that Pulliam made a complaint of race discrimination against Giusti. (Dkt. no. 25, Latoyia Hill Decla., Ex. 25, ¶ 13; *id*. at Ex. 3:199:4-18; dkt. no. 37, Giusti Depo., Ex. 3, 42:16-22.) United's investigations are kept confidential, (*id*. at Ex. 10, Nicholson Depo., 35:23-36:20), and it is undisputed that Hill was not involved in United's investigation of Pulliam's discrimination complaint against Giusti. (Dkt. no. 25, Latoya Hill Decla., Ex. 25 ¶ 13; *id*.

at Ex. 28, ¶ 5.) Pulliam fails to offer any admissible evidence to dispute that Hill did not know about her complaint of discrimination against Giusti.[7]

Pulliam's only other evidence of causation is the closeness in time between her discharge and her filing of a race discrimination complaint against Giusti. She filed the complaint in November 2007 and was discharged two months later in January 2008. "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d. 493, 507 (9th Cir. 2000). Although there is a closeness in time present in this case, the Court finds that this fact alone is insufficient to create a fact question as to causation, *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient"), especially given the evidence that Hill had no knowledge of Pulliam's complaint against Giusti.

Furthermore, even if Pulliam could establish a causal link – and therefore a *prima facie* case of retaliation – the Court finds that, as discussed above, United has presented legitimate reasons for discharging Pulliam, which Pulliam has not demonstrated as being pretextual. Accordingly, the Court grants United's motion as to this claim.

### 5. Injunctive Relief

Pulliam seeks an injunction requiring United to, among other things, prevent and remedy acts of race discrimination in its workplace. However, as Pulliam provides insufficient evidence to establish such discriminatory acts occurred, or are occurring, at

///

---

[7] Pulliam has admitted that she has no information to show that Hill knew about her discrimination complaint to Giusti (dkt no. 25-3 at 199:4-18). Pulliam claims that "many people" working at McCarran International Airport informed her that they "knew about the complaint" she made against Giusti. (Dkt. no. 32, Pulliam Affidavit, ¶ 6.) However, this is inadmissible hearsay and is far too vague to create a dispute of fact as to Hill's knowledge. Additionally, Pulliam's statement does not clarify whether these "many people" even knew Pulliam's complaint alleged racial discrimination. This is critical because, for purposes of a Title VII retaliation claim, a complaint against a co-worker only constitutes protected activity if the complaint asserts a violation of Title VII. 42 U.S.C. § 2000e-3(a).

United, the Court finds she is not entitled to the requested injunctive relief. Therefore, the Court grants United's motion as to this claim as well.

### III. CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that United's Motion to Strike Affidavit of Angela Pulliam (dkt. no. 38) is DENIED.

IT IS FURTHER ORDERED that United's Motion to Strike Declaration of Jacqueline Van Dyke (dkt. no. 39) is DENIED.

IT IS FURTHER ORDERED that United's Motion for Summary Judgment (dkt. no. 25) is GRANTED.

The Court instructs the Clerk of Court to close the case.

DATED THIS 24th day of July 2012.

_____
UNITED STATES DISTRICT JUDGE